ORIGINAL

ANA M. MENJIVAR
P. O. Box 154
Tooele, UT 84074
(415) 420-4637
*Ammenjivar123rr@gmail.com*

Pro Se Plaintiff

BY FAX

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

CV 16 5214 VC

| | |
|---|---|
| ANA M. MENJIVAR, an individual | ) |
| | ) Case Number: 5214 |
| Plaintiff), | ) |
| | ) COMPLAINT FOR DAMAGES AND |
| vs. | ) INJUNCTIVE AND OTHER RELIEF |
| | ) |
| MTGLQ INVESTORS, LP., J.P.MORGAN | ) |
| CHASE BANK, N.A., RUSHMORE LOAN | ) |
| MANAGEMENT SERVICE LLC, | ) DEMAND FOR JURY TRIAL |
| QUALITY LOAN SERVICE CORPORATION; | ) Yes [ ]          No [X] |
| DOES 1 through 10, inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

COMES NOW Plaintiff Ana M. Menjivar, prose se, and alleges the following based upon her personal knowledge and belief:

### I.    Jurisdiction.

1. This court has jurisdiction over this complaint because it arises under the laws of the United States. This is an action brought by a consumer for violations of the Fair Debt Collection Practices Act (15 U.S.C. §1692, et seq, hereafter "FDCPA") and under the

[Verified] COMPLAINT FOR DAMAGES and INJUNCTIVE AND OTHER RELIEF

Federal Truth in Lending Action, Regulation Z §226.23 pursuant to 15 U.S.C. 1635. Therefore, subject matter jurisdiction exists under 28 U.S.C. §1331.

2. This court also has jurisdiction over this complaint under diversity jurisdiction because the plaintiff does not live in the same state as any of the defendants and the amount of damages is more than $76,000.00. Therefore, subject matter exists under 28 U.S. C. §1332.

## II.  Venue.

3. Venue is appropriate in this court because the property which is the subject of this litigation is in this district and a substantial amount of the acts and omissions giving rise to this lawsuit occurred in this district.

## III.   Intradistrict Assignment.

4. This lawsuit should be assigned to the San Francisco Division of this Court because a substantial part of the events or omissions which give rise to this lawsuit occurred in Sonoma County.

## IV.   Parties.

5. Plaintiff's is Ana M. Menjivar, an individual, and is currently a resident of the state of Utah.

6. The subject real property   ("the property" or "Plaintiff's property") is situated in the County of Sonoma, State of California and is commonly described as 123 Railroad Avenue, Cloverdale, California 95425. The originator of Plaintiff's mortgage loan was Washington Mutual Bank, F.A. (hereafter "WaMu").

7. J.P.Morgan Chase Bank, N.A. (hereafter "JPMC") is organized and existing under the laws of the United States of America, has its principal executive offices at 270 Park Avenue, Midtown Manhatten, New York City, New York.  From September, 2008 through January, 2016, acted in the capacity as servicer of Plaintiffs' mortgage account immediately after WaMu went into receivership and was seized by the FDIC.  However,

[Verified] COMPLAINT FOR DAMAGES and INJUNCTIVE AND OTHER RELIEF

there is no recorded transfer, sale or assignment of the servicing rights from WaMu to JPMC.

8. Rushmore Loan Management Services (hereafter "Rushmore") is an entity with a California address at 15480 Laguna Canyon Road #100, Irvine, California 92618, (888) 699-5600.   Rushmore claims to be the current servicer of Plaintiffs' mortgage account having assumed the account from JPMC on February 1, 2016.

9. MTGLQ Investors LP (hereafter "MTGLQ") is located c/o The Goldman Sachs Group Inc., 6011 Connection Drive, 5th Floor, Irving, Texas 75039, (972) 501-3915.   MTGLQ claims that Plaintiff's note and deed of trust were to her property were sold, assigned or transferred to it on or about December 23, 2015.

10. Quality Loan Service Corporation ("Quality") is located at 411 Ivy Street, San Diego, California 92101 (619) 645-7711.  Quality is the successor trustee purportedly appointed recently by the 'present beneficiary,' to provide foreclosure services for the Defendants. On June 23, 2015, Quality recorded a Notice of Default against Plaintiff's property. A Notice of Trustee's Sale was recorded shortly thereafter the sale date was postponed pending consideration of Plaintiff's application for loan modification.    However, the Trustees sale is now scheduled for **September 16, 2016**.

## V.   Statement of Facts.

11. On or about September 21, 2004, Plaintiff executed an Adjustable Rate Note (hereafter "note") (**Exhibit A**) and Deed of Trust (hereafter "DOT") (**Exhibit B**) in the amount of $296,000.00.   At that time, WaMu was conducting business in the county of Sonoma, California, and was the originator of Plaintiffs' mortgage loan that purportedly funded the note to the individual mortgagee.

12. The DOT was recorded on September 24, 2004, as document number 2004146702 in the Official Records of Sonoma County and named Plaintiff as "Borrower" and WaMu was identified as "Lender" as well as "the beneficiary under this security agreement." California Reconveyance Company was named as Trustee.

[Verified] COMPLAINT FOR DAMAGES and INJUNCTIVE AND OTHER RELIEF

13. Within two weeks after Plaintiff executed the note, DOT and other documents, WaMu supposedly sold, assigned or transferred the note and deed of trust to Federal National Mortgage Association ("Fannie Mae") on or about November 1, 2004. Fannie Mae then sold, assigned or transferred Plaintiff's note and DOT to an investment trust which became a part of, or was subject to, a loan pool (identified as Pool Number 806506, CUSIP Number 31406DAF3), a pooling and servicing agreement and a Trust Indenture for Guaranteed Mortgage Pass-Through Certificates. Thereafter, WaMu acted as a servicer of the loan although there was no servicing agreement between WaMu and Fannie Mae. WaMu was neither "Lender" nor "Beneficiary" after November, 2004.

14. In September, 2008, WaMu went into receivership and its assets were seized by the FDIC. JPMC acquired some of WaMu's assets at this time and assumed WaMu's loan servicing duties of Plaintiff's loan account but did not acquire any beneficial interest in the note or DOT. JPMC performed servicing duties on Plaintiff's mortgage account until 2016, as described infra.

15. In the interim, on or about March, 21, 2011, Plaintiff filed an action against JPMC and Fannie Mae for, inter alia, quiet title.[1] In verified responses to discovery propounded to Fannie Mae and JPMC by Plaintiff, Defendants asserted Fannie Mae purchased Plaintiffs' Note from WaMu in early November, 2004 and stated the [i]*ssuance date of the Mortgage Backed Securities Pool, which included Plaintiff's promissory note, was November 1, 2004."* In its responses to discovery, JPMC confirmed Fannie Mae's claim that Fannie Mae was the investor of Plaintiff's loan. Fannie Mae claimed it paid $295,321.91 for Plaintiff's Note. The Defendants both also confirmed there was **no assignment of Plaintiffs' note or DOT to Fannie Mae and that the note was never endorsed to Fannie Mae**.

16. In the years during the litigation of Plaintiff's previous case, the matter went to trial on

---

[1]  Menjivar v. JP MORGAN CHASE, et al, Sonoma County Superior Court, Case No. SCV-249290

4

1    an an a remaining accounting issue following JPMC's summary judgment motion on other

2    the issues.   After losing at trial, Plaintiff filed an appeal with the Court of Appeals and

3    the California Supreme Court with negative results.   Following the appeal, defendant

4    JPMC initiated foreclosure proceedings against Plaintiff's property.

5    17. In an attempt to save her property, Plaintiff submitted a request for Loan Assistance with

6    JPMC in, or about, July, 2015.   The process took several months wherein JPMC would

7    indicate, in writing, that no further action was necessary by Plaintiff, followed by another

8    document stating the reverse, i.e. that more documentation was need.

9    18. For months, Plaintiff promptly provided all documents requested by JPMC.   Despite

10    Plaintiff's full cooperation with the loan modification process, JPMC set a Trustee's Sale

11    date in December, 2015, prompting plaintiff to have to retain an attorney for immediate

12    help.   JPMC set the sales date even though it never provided a written (or verbal)

13    decision or denial on Plaintiff's loan modification application.

14    19. A few days before the scheduled Trustee's Sale, JPMC agreed to postpone the sale.  A

15    short time thereafter, JPMC informed Plaintiff that defendant Rushmore would be

16    servicing the loan.   JPMC never completed an evaluation as to Plaintiff's qualifications

17    for a loan modification or loan assistance.   Instead, JPMC compelled Plaintiff to

18    withdraw her Loan Assistance application with JPMC even though Plaintiff did not wish

19    to do so. JPMC informed Plaintiff that she would have to begin the process all over again

20    with Rushmore.   Rushmore assumed JPMC's mantle acting as servicer of Plaintiff's

21    mortgage account on February 1, 2016.

22    20. In approximately May, 2016, Rushmore sent Plaintiff a loan modification packet which

23    Plaintiff reviewed.   Rushmore's requirements were more daunting and restrictive than

24    JPMC's.   For example, Rushmore required six (6) months of documentation whereas

25    JPMC had only required two (2). Moreover, based upon Rushmore's written disclosures,

26    it appeared that Plaintiff would not qualify for a loan modification.   Therefore, Plaintiff

27

28

[Verified] COMPLAINT FOR DAMAGES and INJUNCTIVE AND OTHER RELIEF

1    elected not to submit the application and, instead, is seeking the Court's declaratory,

2    and other relief, instead.

3    **VI.    Issues Presented.**

4    21. Plaintiff brings this action against each Defendant in order to stop further foreclosure

5    proceedings against Plaintiff's property and their attempt to deprive Plaintiff of her

6    property as Defendants do not have a lawful right to do so.    Defendants' fraudulent

7    representations and acts in furtherance of attempting to wrongfully foreclosure on

8    Plaintiff's property are in direct violation of the Fair Debt Collection Practices Act and

9    California statutes including sections of the Homeowner Bill of Rights and provisions

10    involving unfair business practices.

11    22. In January, 2016, plaintiff also exercised her rights under the Federal Truth in Lending

12    Act, 15 U.S.C. §1635, Regulation Z §226.23 which allows for a borrower to rescind the

13    Note and Deed of Trust by operation of law. This occurred in this case as of February 25,

14    2016, after Plaintiff's attorneys sent the rescission Notice to the defendants and more

15    than 20 days elapsed without any lawful response from any Defendant.

16    23. In two separate instances, Plaintiff rescinded her note and deeds of trust under TILA 15

17    U.S.C. § 1635(a) by sending two written Notices of Rescission to the Defendants. Thus,

18    on February 16, 2016 (on the first notice) and February 25, 2016, (on the second notice),

19    the Notices effectively voided all contracts and debt. Therefore, Defendants also have no

20    standing to initiate a foreclosure or collect payments under the contract because the

21    contract was extinguished by operation of law on February 25, 2016.[2]

22    24. This loan was the result of predatory lending. It was based on illegal and unfair business

23    practices and fraud that were designed to force Plaintiff into forfeiting her property.

24

25

26

27    [2]  Plaintiff's attorneys sent a Notice of Rescission which was signed by Plaintiff to each Defendant on January 27, 2016, **(Exhibit C)** and again, on February 5, 2016 .    . The January Notice was sent by regular first-class mail. The February Notice was sent by certified mail.

28

[Verified] COMPLAINT FOR DAMAGES and INJUNCTIVE AND OTHER RELIEF

1    25. Plaintiff is informed and believes and thereon alleges that her mortgage contract[3] with
2        WaMu, failed to disclose significant provisions of the agreement and fraudulently
3        concealed the fact that WaMu was not the true lender. It is clear given the speed with
4        which Plaintiff's note and DOT were "sold, assigned or transferred," that WaMu merely
5        acted as the originator but the funds for the loan came from a pool of investor money, be
6        it from Fannie Mae or others. WaMu, while holding itself out to be a bank, misled
7        Plaintiff and failed to reveal the identity of an important party to the contract. Further,
8        WaMu itself, did not place its own money at risk at any time during the transaction.
9        WaMu had little, to no, economic interest in the contract and did not risk its own funds.
10       Yet, for years, WaMu held itself out as the "beneficiary" of the loan.

11   26. Consequently, Plaintiff further contends that the statutory period within which
12       rescission may be asserted under TILA, has been equitably tolled. With the exception of
13       Plaintiff's recent discovery of JPMC's fraudulent assertions that it acquired, and is the
14       present beneficiary, of Plaintiff's note, Plaintiff has yet to discover the full extent of
15       Defendants' fraudulent concealment.

16   27. Plaintiff is informed and believes and thereon alleges, that even Fannie Mae was not the
17       true lender in the contract and Plaintiff has yet to be informed or discovery the identity
18       of the entity who actually funded her loan.

19   28. "Equitable Tolling is applied to effectuate the congressional intent of TILA." *King v.*
20       *California,* 784 F. 2d 910, 914 (9th Cir. 1986) "Courts have construed TILA as a remedial
21       statute, interpreting it liberally for the consumer." Id., Citing *Riggs v. Gov't Emps. Fin.*
22       *Corp.,* 623 F. 2d 6  8, 70-71 (9th Cir. 1980). Specifically, the 9th Circuit held: "[T]he
23       limitations period in section 1640(e) runs from the date of consummation of the

24   _____
     [3] Cal. Civil Code §2920 defines a mortgage (i.e. any security device or instrument)as a contract:
25     (a) A mortgage is a contract by which specific property, including an estate for years in real property, is
     hypothecated for the performance of an act, without the necessity of a change of possession.
26     (b) For purposes of Sections 2924 to 2924h, inclusive, "mortgage" also means any security device or
     instrument, other than a deed of trust, that confers a power of sale affecting real property or an
27   estate for years therein, to be exe rcised after breach of the obligation so secured, including a real property
     sales contract, as defined in Section 2985, which contains such a provision.
28

[Verified] COMPLAINT FOR DAMAGES and INJUNCTIVE AND OTHER RELIEF

1  transaction but that the doctrine of equitable tolling may, in appropriate circumstances,
2  suspend the limitations period until the borrower discovers or had the reasonable
3  opportunity to discover the fraud or non-disclosure that form the basis of the TILA
4  action. Therefore, as a general rule the limitations period starts at the consummation of
5  the transaction. The district courts, however, can evaluate specific claims of fraudulent
6  concealment and equitable tolling to determine if the general rule would be unjust or
7  frustrate the purpose of the Act and adjust the limitations period accordingly." *King*,
8  supra.   Plaintiff's contract with WaMu was never consummated and was, at the
9  inception, void.

**VII.  Claims**

**Claim 1.**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

29. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

30. Section 807 of the FDCPA, 15 U.S.C. §1692e, prohibits debt collectors from using any false, deceptive or misleading representation or means in connection with the collection of any debt.

31. In numerous instances, Defendants, directly or indirectly, have used false representations concerning the character, amount or legal status of a debt in violation of 15 U.S.C. 1692e(2)(A).

32. As described in Paragraphs 13 through 20, supra, in connection with the attempt to collect a debt they were not entitled to, Defendants have used false, deceptive or misleading representations or means.

33. Defendants' representations constitute false, deceptive or misleading representations or means in violation of Section 807 of the FDCPA, 15 U.S.C. §1692e.

34. Further, Defendants JPMC and Rushmore, which are debt collectors under the FDCPA, violated the FDCPA in numerous ways including, but not limited to: refusing to verify or

to provide validation of the debt;  claiming to be the "present beneficiary" of Plaintiff's note and DOT; and recording documents against Plaintiff's property containing false assertions.

35. The acts and practices in Paragraphs 13 through 20 constitute violations of Section 807 of the FDCPA, 15. U.S.C. §1692e.  Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. §1692l(a), the acts and practices alleged in Paragraph 13 through 20 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C.§ 45(a).

WHEREAS, Plaintiff prays for relief as set forth below.

## Claim 2.
## UNFAIR BUSINESS COMPETITION

36. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

37. Through their acts as described herein, Defendants violated California's Unfair Competition Law which prohibits "any unlawful, unfair or fraudulent business act or practice." (Cal. Bus.&Prof. Code §17200.)

38. Plaintiff alleges that Defendants have engaged in deceptive business practices by attempting to collect on a debt that was void and unenforceable; by failing to authorize, consider or evaluate Plaintiff's loan modification request thereby denying her the benefits of the loan agreement and of the benefits of the Federal Loan Modification program (HAMP) and any other loan default resolution program without good cause and in bad faith.

39. Plaintiff further alleges that each Defendant also engaged in deceptive business practices by fraudulently and/or negligently and carelessly recommending, offering, marketing, accepting, purchasing and/or collecting on a debt they knew or should have known, was void due to the illegal  nature of the contract.   Such acts were unconscionable as a

[Verified] COMPLAINT FOR DAMAGES and INJUNCTIVE AND OTHER RELIEF

violation of the public policy of promoting home ownership and preventing foreclosures. (Cal. Civil Code §§2923.5, 2423 et seq., 2924 et seq.)

40. Defendants' acts as described herein constitute unfair business practices as the acts were injurious to Plaintiff and were and are, in direct contravention to the intent of California public policy to promote and preserve home ownership and to prevent foreclosures. (Cal. Civil Code §§1695(b), 2923.5.)

41. Plaintiff further alleges that Defendants acts were oppressive and substantially injurious to consumers, such as the Plaintiff, in that they were committed with the intent and/or knowledge that the commission of the acts would result in the certain default of the subject loan and possible forfeiture of the Plaintiff's home and equity. Defendants' acts in furtherance of its fraudulent and deceitful corporate policies, in willfully deceiving the Plaintiff regarding her right to be considered for a modification of the illegal loan were in violation of California law and public policy in that they were misleading and injurious to Plaintiff.

42. As a direct and proximate cause of Defendants' acts, the Plaintiff has suffered consequential damages in an amount to be fully determined at trial, but in an amount exceeding $100,000.00 to date and is entitled to all statutory damages as provided in the above referenced Code sections, including attorneys' fees and costs.

## Claim 3
## Wrongful Foreclosure

43. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

44. Soon after WaMu originated the loan, Plaintiff is informed and believes and thereon alleges that WaMu transferred all beneficial interest to Fannie Mae. There was no recorded transfer, or any documentation *at all*, confirming the transfer of beneficial interest to Fannie Mae and, most certainly, JPMC. JPMC did not have the right or standing to sell, transfer or assign Plaintiff's note or deed of trust or to substitute a

successor trustee or to "assign" it's non-existent interest to Defendant MTGLQ. Accordingly, MTGLQ and Rushmore did not have the right to initiate foreclosure proceedings.

45. The operative Notice of Default was filed on June 23, 2015. **(Exhibit D )** The document falsely implies and indicates that the "present beneficiary" is JPMC. However, JPMC was never the beneficiary. Nonetheless the operative Notice of Default is also inherently defective because, in accordance with Defendants' fraudulent scheme, the "present beneficiary" named on the document should be MTGLQ especially since JPMC recorded an Assignment of Deed of Trust purportedly assigning its interest in Plaintiff's note and DOT to MTGLQ, on March 22, 2016. **(Exhibit E)**

46. Defendants' scheme violated Cal. Civil Code §2924(a)(6) which states that [n]o entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

47. Further, Cal. Civil Code §2923.5 requires that a "mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" before recording a notice of default. Cal. Civil Code §2923.5(a)(2). None of the defendants is a legitimate mortgagee, beneficiary, trustee or authorized agent. As discussed above, if ever WaMu was a lawful beneficiary, it relinquished that title by the sale, assignment or transfer of Plaintiff's note and DOT to Fannie Mae and then Fannie Mae's further apparent securitization thereof. Neither JPMC nor Rushmore are or were beneficiaries, trustees

11

[Verified] COMPLAINT FOR DAMAGES and INJUNCTIVE AND OTHER RELIEF

or authorized agents of the true beneficiary.  Defendants, therefore, are in violation of the law for having filed a notice of default without the lawful ability to do so.  Plaintiff was not contacted by the legitimate mortgagee, beneficiary, trustee or authorized agent in order to explore options in order to avoid foreclosure.

48. **Tender**.  Plaintiff contends that the tender requirement does not apply under her §2923.5 claim because "the whole point of section 2923.5 is to create a new, even if limited, right to be contacted about the possibility of alternatives to full payment of arrearages.  It would be contradictory to thwart the very operation of the statue if enforcement were predicted on full tender.  *Mabry v. Superior Court*, 185 Cal.App. 4th 208, 225 (2010).  Moreover, "if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt."  *Lona v. Citibank*, N.A., 202 Cal.App.4th 89, 112 (Cal. Ct. App. 2011) Thus the tender rule does not apply here because Plaintiff's claims allege that Defendants do not own any of Plaintiff's debt and lack authority to foreclose on her property.  Consequently, any foreclosure sale would be void rather than merely voidable.  See *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1147 (N.D. Cal. 2013)

WHEREAS, Plaintiff prays for relief as set forth below.

## Claim 4.
## FRAUD

49. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

50. The elements which must be pleaded to plead a fraud claim are (a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage.  *Philipson & Simon v. Gulsvig* 154 Cal.App.4th 347, 363 (Cal.Ct.App. 2007)

51. Despite the fact that WaMu purportedly sold the note to Fannie Mae in 2004; and that

12

JPMC admitted in verified responses to Plaintiff's previous discovery requests that *it was not the beneficiary* and asserted, instead, that Fannie Mae was the "investor:" and that JPMC did not acquire Plaintiff's note and DOT in 2008 from the FDIC as receiver for Wamu, JPMC caused a fraudulent Assignment of Deed of Trust to be recorded against Plaintiff's property wherein JPMC deceitfully claimed that it *was* the successor in interest of Plaintiff's note and DOT by purchase from the FDIC.

52. Moreover, JPMC deceptively caused to be recorded a "Substitution of Trustee" (No. 2015047997) on June 3, 2015, in the Sonoma County Recorders Office, also claiming to be the "present Beneficiary under [Plaintiff's] Deed of Trust" and substituted defendant Quality in place of the originally named trustee, California Reconveyance Corporation. JPMC's actions described herein, together with the acquiescence of the other Defendants clearly present evidence of 'scienter,' i.e. knowledge of the falsity of their claims and wrongfulness of their actions.

53. Plaintiff contends that the acts and omissions of the Defendants, and each of them, constitute extreme and outrageous conduct.

54. Plaintiff further contends that Defendants, and each of them, engaged in such conduct either intentionally or with reckless, willful or callous disregard for Plaintiff's rights and with malice, fraud or oppression toward Plaintiff thereby entitling Plaintiff to an award of punitive damages in accordance with proof at trial.

WHEREAS, Plaintiff prays for relief as set forth below.

### Claim No. 5
### INJUNCTION FOR VIOLATION OF FDCPA

55. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

56. Under 15 U.S.C. §53(b), this Court is authorized to issue a permanent injunction to ensure that Defendants will not continue to violate the FDCPA.

/ / /

## Claim No. 6
### EQUITABLE RELEIF FOR VIOLATION OF THE FDCPA

57. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

58. Under 15 U.S.C.§§53(b) and 57b, this Court is authorized to issue all equitable and ancillary relief as it may deem appropriate in the enforcement of the FDCPA including the ability to order the disgorgement of illgotten monies.

## Claim No. 7
### CIVIL PENALTIES FOR VIOLATIONS OF THE FDCPA

59. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

60. Defendants have violated the FDCPA as described above, with actual knowledge or knowledge fairly implied on the basis of objective circumstances as set forth in 15 U.S.C.§ 45(m)(1)(A).

## Claim No. 8
### PLAINTIFF IS ENTITLED TO DECLARATORY RELIEF
### BASED ON HER LEGAL RESCISSION UNTIL TILA

61. On January 27, 2016, plaintiff's attorneys sent a written "Notice of Rescission" signed by Plaintiff, to Defendants MTGLQ, JPMC, Rushmore. Fannie Mae was also served with the Notice. These letters were sent "regular mail" in error. Therefore, the attorneys resent the Notices by certified mail on February 5, 2016.

62. Plaintiff received letters from Defendants JPMC on February 12, 2016 and Rushmore on February 19, 2016, confirming receipt of Plaintiff's Notice of Rescission and indicating that Defendants were investigating the matter.

63. On February 16, 2016, Plaintiff received a letter from JPMC declining Plaintiff's Notice of Rescission and referring Plaintiff to Rushmore. In or about April, 2016, Plaintiff received a response from Rushmore dated March 29, 2016, containing documents which purportedly "validated" the debt. The documents were photocopies of the 2004 note and deed of trust prepared by WaMu, an "Account Activity Statement" recently prepared by

14

1      Rushmore and a Notice of Assignment, Sale or Transfer of Servicing effective

2      02/02/2016. Neither Defendant took any further action beyond the correspondence

3      sent to Plaintiff.

4   64. Defendants' declination was not an appropriate response as, according to TILA, the

5      "lender" who receives a notice of rescission is obligated to send it to the "real" lender and

6      must file a declaratory action against the borrower within 20 days in order to avoid the

7      rescission. Otherwise, Defendants waive any objections they could have made. The

8      transaction has never been consummated with anyone in the chain of parties claiming

9      the right to enforce the loan and, as such, the three day right of rescission period has not

10      begun to run.

11   65. Plaintiff is informed and believes that Defendants could never prove they have standing

12      to enforce the deed of trust and foreclose on Plaintiff's property and, for this reason,

13      failed to file a declaratory action denying Plaintiff's notice of rescission as required under

14      15 U.S.C.§1635(b).

15   66. Of primary concern and importance, as clarified in the U. S. Supreme Court decision in

16      *Jesinoski v. Countrywide Home Loans*, Inc., 135 S. Ct. 790, 190 L. Ed. 2d 650, 574 U.S.

17      (2015), the obligor's exercise of the rescission triggers a series of steps through which the

18      transaction is unwound. First, when an obligor exercises his/her right to rescind, he/she

19      is not liable for any finance charge or other charge, and any security interest given by the

20      obligor becomes void upon rescission. 15 U.S.C. § 1635(b). Second, within twenty days

21      after receipt of the notice of rescission, the creditor shall return to the obligor any money

22      or property given as earnest money, down payment or otherwise, and shall take any

23      action necessary or appropriate to reflect termination of any security interest created

24      under the transaction. Third, upon performance by the creditor's obligations under this

25      section, the obligor shall tender any property the creditor has previously delivered (or its

26      reasonable value). Pursuant to Reg Z notice is given by mail, telegram, or other means of

27      written communication. 12 C.F.R.§226.23(a)(2).

28

[Verified] COMPLAINT FOR DAMAGES and INJUNCTIVE AND OTHER RELIEF

67. Erroneously, lower Courts have misinterpreted §1635 as requiring the obligor to file a lawsuit to *effect* rescission. However, the plain language of the statute puts no such requirement on the obligor. That provision "says nothing in terms of an action" or a "suit's commencement"; rather it speaks to the "duration" of the rescission right. Beach v. Ocwen Fed. Bank, 523 U.S. 410, 417 (1998).  The Supreme Court found that nowhere does § 1635(a) allow for a debate as to disputed or undisputed notices; simply put the transaction and its contracts are void as a matter of law upon mailing of the Notice of Rescission. *Jesinoski*, supra, at 793.  Based on the clarification of the TILA rescission by the Supreme Court, Plaintiff's contracts became void as of February 16th or the latter date, February 25, 2016. Regardless to whether the creditor fulfills its legal requirement to return all funds paid on the loan and reflect the termination of the security instrument, the loan no longer exists; the contracts are void and any acts by any party based on the loan or contracts are illegal.

## VIII.  Request for Relief.

WHEREFORE, Plaintiff hereby respectfully requests the following relief from the Court:

1. That the attempted foreclosure of Plaintiff's property be declared illegal and that Defendants be forever enjoined and restrained from selling Plaintiff's property or attempting to sell it or causing it to be sold, either under power of sale pursuant to the Deed of Trust or by foreclosure action, and from posting, publishing, or recording any notice of default or notice of trustee's sale contrary to state or federal law.

2. That the underlying loan transaction be declared void as a result of Defendants and WaMu' misrepresentations, fraud, concealment and predatory loan practices.

3. That Defendants make restitution to Plaintiff according to proof.

4. For a judgment determining that Plaintiff is the owner in fee simple of the property known as '123 Railroad Avenue, Cloverdale, California 95425' against

[Verified] COMPLAINT FOR DAMAGES and INJUNCTIVE AND OTHER RELIEF

the adverse claims of Defendants and that Defendants have no interest in the
Plaintiff's property adverse to Plaintiff.

5. For rescission of the loan contract(s) and restitution of all principal and
interest as well as any and all costs and fees paid on the loan.

6. For general, compensatory, consequential and special damages according to
proof.

7. For punitive damages.

8. For all statutory damages applicable to each cause of action.

9. For costs of suit and reasonable attorneys fees.

10. For any and all other and further relief that may be just in this matter.

Dated:  September 12, 2016

ANA M. MENJIVAR
Plaintiff, Pro Se

## VERIFICATION

Ana M. Menjivar, declares:

I am the Plaintiff in the above-entitled action.   I have read the foregoing Complaint and
know its contents.   The same is true of my own knowledge, except as to those matters that are
alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this
declaration was executed in Tooele, Utah, on September 12, 2016.

ANA M. MENJIVAR
Plaintiff, ProSe

[Verified] COMPLAINT FOR DAMAGES and INJUNCTIVE AND OTHER RELIEF